IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

**R T ELECTRIC, INC.**, a New
Mexico corporation,

       **Plaintiff,**

vs.                                                                                     No. CIV 99-1409 LCS-ACE

**SKILLED SITE SERVICES, INC.**,
a Texas corporation,

       **Defendant.**

**SKILLED SITE SERVICES, INC.**,
a Texas corporation,

       **Counter claimant/Third-Party Plaintiff,**

vs.

**KEVIN TEGMEYER and R T ELECTRIC, INC.**,

       **Third-Party Defendants.**

## MEMORANDUM OPINION AND ORDER

      **THIS MATTER** is before the Court on Defendants' Motion for Partial Summary Judgment (Doc. 37), filed September 15, 2000. The Court, acting upon consent and designation pursuant 28 U.S.C. § 636, having considered the submissions of counsel, applicable law, and being otherwise fully advised, finds that this Motion is well-taken and should be **GRANTED.**

**I.      Background.**

Plaintiff is a New Mexico corporation with its principal place of business located in New Mexico. Defendant is a Texas corporation with its principal place of business located in Texas. The amount in controversy exceeds $75,000.00, exclusive of interest and costs. Jurisdiction is founded upon diversity of citizenship. *See* 28 U.S.C. § 1332. Kevin Tegmeyer was the president and Richard Vincell was the project manager for Plaintiff. (Def. Ex. B; C.) Carl Hudspeth was the president of Defendant. (Def. Ex. A.)

In June of 1998, Plaintiff and Defendant entered into a verbal agreement whereby Plaintiff agreed to construct the electrical portion of thirty-two communication towers located in New Mexico at the fixed price of $10,295.00 per site. (Def. Ex. A.) The scope of work did not include the furnishing of electrical generators or the fuel to operate them. (Def. Exs. B; C.) If a tower exceeded 200 feet in height, the FAA regulations required that it be lit by a beacon. (Def. Ex. C; X.) If permanent electrical power had not been obtained, it was necessary to connect to temporary power or to install a generator to supply electricity to the beacon. (*Id.*)

A dispute arose over which party was responsible for the costs of the generator rental and fuel. In his affidavit, Mr. Hudspeth stated that Defendant agreed to submit the first few invoices for rental and fuel to the customer, American Tower, and request payment but that Mr. Hudspeth advised Mr. Tegmeyer and Mr. Vincell that no further invoices would be paid. (Def. Ex. A; X.) Mr. Vincell testified that the issue of temporary power first arose at the Continental Divide site, that the generator was rented under Plaintiff's account but it had not been determined who would be responsible for the costs, that Mr. Hudspeth told Mr. Vincell that it was Plaintiff's responsibility to pay the costs and that it would not be in Plaintiff's best interest to leave the generators very long because it could be a

"pretty expensive deal," that as Plaintiff paid the rental bills, it would "pass the bills on" to Defendant and Defendant would bill American Tower, that Plaintiff had to make sure permanent power was extended to the sites so the generators could be removed, that Mr. Hudspeth was complaining about the generators remaining on site too long and asking why permanent power was not at the sites, and that Mr. Hudspeth said it was going to be difficult to get American Tower to pay for the generators. (Def. Ex. C.)

Tegmeyer testified that an agreement was made between Vincell and Hudspeth for Plaintiff to provide generators and fuel for an additional charge. (Def. Ex. B.) Hudspeth stated in his affidavit that Defendant paid the first few invoices for generator rental and fuel. (Def. Ex. A.) Defendant's spreadsheet indicates that Defendant paid most, but not all, of Plaintiff's invoices for generator fuel and rentals between October 8, 1998 and May 28, 1999. (Def. Ex. W.)

Plaintiff, through Tegmeyer, executed releases and cashed payment checks for the following nine sites on the following dates:

>I-40 @ Exit 126, January 27, 1999, Invoice #5864  (Def. Ex. E.)

>Bluewater, December 15, 1998, Invoice #5510 (Def. Ex. G.)

>Casa Blanca, January 27, 1999, Invoice #5656 (Def. Ex. I.)

>Clines Corner, January 27, 1999, Invoice #5514 (Def. Ex. K.)

>Cuervo, December 15, 1998, Invoice #5512 (Def. Ex. M.)

>Grants #3, December 15, 1998, Invoice #5516 (Def. Ex. O.)

>Lemitar, January 27, 1999, Invoice #5517 (Def. Ex. Q.)

>Milagro, December 15, 1998, Invoice #5511 (Def. Ex. S.)

>Sheeps Canyon, January 27, 1999, Invoice #5515 (Def. Ex. U.)

Each release referenced a specific invoice. The operative language of the releases was identical and provided in pertinent part:

> These amounts represent payment in full for all amounts due for the contract work as of the date of this payment receipt waiver and release of lien, under our contract or agreement with the general contractor as increased or decreased by the change order specified above.
>
> The undersigned hereby certifies that (1) the amounts set forth above are true and correct, (2) there are no additional costs of [sic] claims for any extras or additions for labor and material on the above described project other than those included in the contract amount and any change order amounts set forth above, and (3) all contract work and/or materials for which payment has been made is completed and in place at the premises.

(Def. Exs. E; G; I; K; M; O; Q; S; U.)

Plaintiff filed suit in the Second Judicial District Court of the State of New Mexico, alleging breach of contract, breach of warranty of sufficiency of plans and specifications, breach of implied duty to order changes, breach of implied duty to inspect and specify corrective action, breach of implied duty to cooperate and not hinder contractor in performance of duties, and unjust enrichment. Defendant removed the case to this Court and counterclaimed for breach of contract, fraud and misrepresentation, negligent misrepresentation, and unfair trade practices..

**II. Standard**

A motion for summary judgment may be granted only when "there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). Summary judgment is proper when the pleadings, depositions, answers to interrogatories and admissions on file, as well as any affidavits "show that there is no genuine issue as to any material

fact." *Id.* When applying this standard, the Court examines the record and reasonable inferences in the light most favorable to the non-moving party. *See Simms v. Oklahoma ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F. 3d 1321, 1326 (10th Cir. 1999).

The movant bears the initial burden of establishing that no genuine issue exists as to any material fact. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 289 (1968)). The movant's initial burden may be discharged by showing there is an absence of evidence to support the non-moving party's case. *See Celotex v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant meets its burden, the burden shifts to the non-moving party to demonstrate a genuine issue for trial on a material matter. *See McGarry v. Pitkin Co.*, 175 F. 3d 1193, 1201 (10th Cir. 1999).

If the moving party satisfies its initial burden, the party opposing the motion for summary judgment may not rest upon mere allegations or denials in the pleadings, but must set forth specific facts showing there is a genuine issue for trial as to a dispositive matter for which it carries the burden of proof. *See Simms,* 165 F. 3d at 1326. It is not sufficient "to simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co v. Zenith Radio Corp.*, 475 U.S. at 586. An issue of material fact is genuine if a reasonable jury could return a verdict for the party opposing the motion. *See Bullington v. United Air Lines*, Inc., 186 F. 3d 1301, 1313 (10th Cir.1999). The substantive law at issue determines which facts are material in a given case. *See Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary

judgment." *Id.*

## III.   Analysis

Defendant moves for partial summary judgment dismissing all of Plaintiff's claims for reimbursement for generator rental and fuel costs furnished to those tower sites for which Plaintiff accepted payment and executed releases. Defendant argues that when Plaintiff accepted payment for the nine sites and executed the releases, the parties mutually agreed that the payments constituted full payment for all amounts claimed to be due for those sites and that there was an accord and satisfaction with respect to those sites.

Plaintiff responds that the releases refer only to the base amount of the contracts and not to furnishing of generators, the releases do not apply to the generator rental and fuel costs, Defendant's conduct with respect to the releases indicates that the releases applied only to the original contract work, if the releases are applied to the generator rental and fuel costs, then they were executed by mistake, there was no additional consideration for releasing payment for generators rentals and fuel costs, and the releases cannot operate as an accord and satisfaction because Defendant did not notify Plaintiff that the releases applied to additional invoices.

New Mexico law applies in this diversity case. *See Wood v. Eli Lilly & Co.*, 38 F. 3d 510, 513 (10th Cir. 1994). Under New Mexico law, an accord and satisfaction is a method of discharging a contract, or settling a cause of action, by substituting an agreement for the satisfaction. *See Frazier v. Ray*, 29 N.M. 121, 123, 219 P. 492, 494 (1923). A creditor who accepts a check tendered as full settlement and appropriates the check to his own use, enters into an accord and satisfaction of a disputed or unliquidated claim. *See Miller v. Montgomery*, 77 N.M. 766, 768, 427 P. 2d 275, 277 (1967).

Although New Mexico has not adopted of the Restatement of Contracts as it pertains to accord and satisfaction, the New Mexico Supreme Court has followed the Restatement of Contracts on several occasions. *See Hydro Conduit Corp. v. Kemble*, 110 N.M. 173, 793 P. 2d 855 (1990); *United Nuclear v. Allendale Mut. Ins. Co.*, 103 N.M. 480, 709 P. 2d 649 (1985); *Grynberg v. Roberts*, 102 N.M. 560, 698 P.2d 430 (1985); *Shaeffer v. Kelton*, 95 N.M. 182, 619 P. 2d 1226 (1980); *O'Meara v. Commercial Insurance Co.*, 71 N.M. 145, 376 P. 2d 486 (1962). Accordingly, this Court may look to the Restatement for guidance.

The Restatement of Contracts § 281 provides in pertinent part that "[a]n accord is a contract under which an obligee promises to accept a stated performance in satisfaction of the obligor's existing duty. Performance of the accord discharges the original duty." RESTATEMENT (SECOND) OF CONTRACTS, §281. Illustration 6 of §281 is particularly helpful in this case:

> A contracts with B to have repairs made on A's house, no price being fixed. B sends A a bill for $1,000. A honestly disputes this amount and sends a letter explaining that he thinks the amount excessive and is enclosing a check for $800 as payment in full. B, after reading the letter, indorses the check and deposits it in his bank for collection. B is bound by an accord under which he promises to accept payment of the check as satisfaction of A's debt for repairs. The result is the same if, before indorsing the check, B adds the words "Accepted under protest as part payment." The result would be different, however, if B's claim were liquidated, undisputed and matured.

RESTATEMENT (SECOND) OF CONTRACTS, §281, Illustration 6.

Thus, the issue is whether Plaintiff executed the releases and accepted the tendered checks as payment in full for the disputed amount owing on the nine sites. It is undisputed that Tegmeyer signed and delivered the releases, and that he cashed the checks. Plaintiff argues that the releases apply only to the base amount of the contracts and that furnishing of generators was outside the scope

of the original contract. The releases clearly refer to each site. The releases do not state that they apply only to the base amount of the contracts. To the contrary, the releases state that the payments "represent payment in full for all amounts due for the contract work." Both parties agree that there was a dispute as to which party was responsible for generator rental and fuel costs. Plaintiff accepted the checks in settlement of this dispute when he executed the releases and cashed the checks.

Plaintiff contends that the releases apply only to the base construction amount and not to the generator rental and fuel costs because that was Tegmeyer's belief when he accepted the check and executed the releases. Plaintiff cannot establish an ambiguity in the clear language of the releases merely by attempting to raise a factual issue as to his state of mind. "As a matter of law, one party's subjective impressions, innermost thoughts, or private intentions, do not create an ambiguity." *Hoggard v. City of Carlsbad*, 121 N.M. 166, 170, 909 P. 2d 726, 730 (Ct. App. 1995). The releases clearly state that "there are no additional costs of [sic] claims for any extras or additions for labor and material on the above described project other than those included in the contract amount and any change order amounts set forth above." Plaintiff's contention that generator rental and fuel costs are not included under the category of materials because they are not incorporated into the project is inconsistent with the plain meaning of these words and wholly without merit. Claims for generator rental and fuel costs are "extras and additions" which were explicitly released by Tegmeyer.

Plaintiff argues that if the releases apply to generator rentals, they were executed by mistake. The cases on which Plaintiff relies involve inadvertent or clerical errors. *See Los Alamos Credit Union v. Bowling*, 108 N.M. 113, 767 P. 2d 352 (1989) (lender inadvertently marked note as paid and released mortgage even though note was not paid); *Sunwest Bank of Clovis v. Garrett*, 113 N.M. 112, 823 P. 2d 912 (1992) (wrong form used to release mortgage). In this case, Tegmeyer does not

8

claim he inadvertently signed the releases. Instead, Tegmeyer argues that he believed that the releases did not apply to the generator rental and fuel costs. A party's unilateral intent or belief insufficient to establish a mutual mistake. *See Hansen v. Ford Motor Co.*, 120 N.M. 203, 206, 900 P. 2d 952, 955 (1995). Because Tegmeyer offers nothing, other than testimony as to his subjective belief, Plaintiff's argument that the releases were executed by mistake is without merit.

Plaintiff claims that there was no additional consideration for releasing payment for generators rentals and fuel costs. Plaintiff received payment for the I-40 @ Exit 126, Bluewater, Casa Blanca, Clines Corner, Cuervo, Grants #3, Lemitar, Milagro, and Sheeps Canyon sites in exchange for signing the releases. Hence there was consideration. Plaintiff also argues that the releases cannot operate as an accord and satisfaction because Defendant did not notify Plaintiff that the releases applied to additional invoices. The clear and unambiguous language of the releases provided that there were no additional claims for any extras or additions. By signing the releases, Tegmeyer certified that there were no additional costs with respect to those sites. By accepting and cashing the checks, Tegmeyer agreed that he had received payment in full for the sites in question.

The evidence establishes that Plaintiff executed full releases and accepted and cashed checks in payment for the I-40 @ Exit 126, Bluewater, Casa Blanca, Clines Corner, Cuervo, Grants #3, Lemitar, Milagro, and Sheeps Canyon sites. Under New Mexico law, Plaintiff accepted the tendered offer and thus consummated an accord and satisfaction of the amounts due on the nine sites. Viewing the evidence in the light most favorable to Plaintiff, I find that there is no issue of material fact that there was an accord and satisfaction with respect to the nine sites.

**IV.    Conclusion**

Defendant is entitled to partial summary judgment that the amounts owing with respect to the

9

I-40 @ Exit 126, Bluewater, Casa Blanca, Clines Corner, Cuervo, Grants #3, Lemitar, Milagro, and Sheeps Canyon sites have been paid in full.

**WHEREFORE,**

    **IT IS ORDERED** that Defendants' Motion for Partial Summary Judgment (Doc. 37), filed September 15, 2000, is **GRANTED.**

                                        _____
                                        **LESLIE C. SMITH**
                                        **UNITED STATES MAGISTRATE JUDGE**